WILLARD et al. v. UNION TOOL CO.

(Circuit Court of Appeals, Ninth Circuit. August 5, 1918. Rehearing Denied October 30, 1918.) No. 3131.

1. PATENTS ⬅90(1)—ANTICIPATION—PRIOR ART.
    Where two bona fide applications for patents are pending at the same time, neither is prior in art to the other.
2. PATENTS ⬅90(1)—PRIORITY BETWEEN PATENTS.
    When two patents for the same invention have been issued to independent inventors, the rule is that the dates of their inventions are (1) the dates of the patents, (2) the dates of the applications, provided they sufficiently describe the invention, and (3) the dates of actual reduction to practice.
3. PATENTS ⬅90(5)—DATE OF INVENTION—REDUCTION TO PRACTICE.
    In the absence of other proof, the filing of application for a patent is taken to be a reduction to practice of the invention.

4. PATENTS ☞91(1)—PRIORITY BETWEEN PATENTS—BURDEN AND MEASURE OF PROOF.

As between rival inventors whose applications are pending at the same time, the burden is on him whose application is second to show that he was first to reduce the invention to practice.

5. PATENTS ☞91(3)—PRIORITY BETWEEN PATENTS—MEASURE OF PROOF.

In a contest between rival inventors for priority of invention, their applications being pending at the same time and both inventors having reduced their conceptions to practice, the one whose application is second, in sustaining the burden of proving that he was the first to reduce the invention to practice, is required to establish his priority only by fair preponderance of evidence and not by proof conclusive in character or beyond a reasonable doubt.

6. PATENTS ☞26(1)—VALIDITY—COMBINATIONS.

The mere fact that human agency intervenes in an operation does not render a combination unpatentable, nor is it necessary that the action of the elements be simultaneous, nor that one of the elements shall so enter into the combination as to change the action of the others; but it is sufficient if there be some joint operation of the elements producing a result due to their co-operative action.

7. PATENTS ☞26(2)—"COMBINATION"—NEW RESULT.

To constitute a patentable "combination," the result itself need not be new, but it is sufficient if an old result be produced in a more facile, economical, or efficient way.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Combination.]

8. PATENTS ☞328—VALIDITY AND INFRINGEMENT—WELL-BORING APPARATUS.

The Willard and Wilcox patent, No. 1,064,270, for a well-boring apparatus, claims 6, 7, 8, and 9, held not anticipated, valid, and infringed. Claims 1, 2, 3, 4, and 5 for combinations held invalid as not for true combinations in a unitary structure.

9. PATENTS ☞25—AGGREGATION—DETACHED PARTS.

A well-boring apparatus patent, for combination of a drive bushing device for rotating the string, with "slips" for holding the string in position while removing or restoring it, the slips being removable by hand when not in use, held a mere aggregation, and not a combination, since the manual use of a tool or an unattached movable device cannot be made an element of a combination claim.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Edward E. Cushman, Judge.

Suit in equity by Arthur G. Willard and William W. Wilson against the Union Tool Company. Decree for defendant, and complainants appeal. Reversed in part and affirmed in part.

Raymond Ives Blakeslee, of Los Angeles, Cal., for appellants.
Frederick S. Lyon, of Los Angeles, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The appeal in this case involves the decrees of the court below in two suits for infringements of patents, namely, Willard and Wilson against the Union Tool Company, and the same plaintiffs against the Oil Well Supply Company and R. H. Herron. Both suits are upon patent No. 1,064,270 issued to Willard and Wilcox on June 10, 1913, on an application filed March 11, 1912. Submitted with these cases in the court below was the case of Griffin et al. v. Wilson et al., upon patent No. 1,067,330, issued

July 15, 1913, to T. J. Griffin, on his application which was filed October 5, 1911. From the decree in the latter case which held the Griffin patent void as anticipated by the prior art, no appeal has been taken.

The appellants' patent is for a well-boring apparatus, and relates to well borers which are provided with rotary tops whereby the rotation of the boring tool and the string of pipe sections extending from the same is caused; the rig being employed in raising and lowering the boring tool and string in performing the operations incident to drilling. The patent contains two general groups of claims. The second group, which embraces claims 6, 7, 8, and 9, will be first considered. The nature of those claims is fairly represented by claim 6, which is as follows:

"In improvements of the character disclosed, the combination with a rotary table and a well-boring string; of a bushing fitting within the table and formed to surround and grip the string and impart rotation from the table thereto; and a member upon the string formed and disposed in a position to engage with said bushing and withdraw the same from the table upon the elevation of of the string."

The court below found that all of this combination was covered by the patent to Griffin of July 15, 1913, except the last element, the "member upon the string formed and disposed in position to engage with said bushing and withdraw the same from the table upon the elevation of the string," and held that, although that element was not mentioned or claimed in the Griffin patent, it was plainly disclosed therein, and that Griffin had the conception of all the claims involved in the patent in suit at the time of the filing of his application which was prior to the application for the appellants' patent, and that the presumption arose therefrom that Griffin had then reduced the same to practice, and held that where the contest is between a patentee or his successors in interest and another person, or his successors in interest, and such other person has been shown to have reduced to practice the combination claimed prior to the filing date of the application of the patentee, the burden rests upon those suing under the patent to show a reduction to practice prior to that of the alleged infringer, and that, since such reduction to practice was not shown by the high degree of proof required, it followed that the claims of the Willard and Wilcox patent were void. In brief, the position of the trial court was, not that the combination described in the appellants' patent did not involve invention and was not patentable, but that Willard and Wilcox were not the first inventors thereof, and that, since Griffin made no claim for that element of the combination which would have rendered his invention patentable, he thereby relinquished the combination to the public, and all were free thereafter to use it.

The contest here does not arise between two rival patentees. It is not between the owners of the patent to Willard and Wilcox, and a manufacturer under the Griffin patent. It is between the owners of the former patent and persons who are admittedly infringers if the claims of that patent are sustainable. It is not claimed that Willard and Wilcox got from Griffin the idea of their combination, or that they were not original inventors of the same.

[1] The contention is that inasmuch as Griffin's application for patent was prior in time and therein the combination was described, although one of its elements was not claimed as part of the invention, it follows that Willard and Wilcox were not the inventors of the combination. If it be assumed that the Griffin invention covers the combination here in question, we have the situation of two independent inventors whose applications were pending at the same time, both of whom, in the absence of proof to the contrary, will be presumed to be original inventors. Where two bona fide applications are pending at the same time, neither is prior in art to the other, for neither can know of the contents of the other's confidential communication on file in the Patent Office. Mergenthaler Linotype Co. v. International Typesetting Mach. Co. (D. C.) 229 Fed. 168.

[2, 3] When two patents for the same invention have been issued to independent inventors, the rule is that the dates of their inventions are: (1) The date of the patents; (2) the dates of the applications, provided the application sufficiently describes the invention; and (3) the dates of actual reduction to practice. In the absence of other proof, the filing of the application is taken to be a constructive reduction to practice. In Kearney v. Lehigh Valley R. Co. (C. C.) 32 Fed. 321, 322, Mr. Justice Bradley said:

"The date of the application, if it describes the invention sufficiently, is conclusive evidence that the invention was made prior to such date."

[4, 5] The date of the Willard and Wilcox patent was prior to that of Griffin, but the latter's application was first in time. There was no evidence that the Griffin invention was ever reduced to practice otherwise than by the filing of his application. There was evidence that the Willard and Wilcox invention was reduced to practice prior to the date of Griffin's application; but the court below held that the evidence was not of that high degree which was required, and applied the rule which the appellee herein contends for, that the evidence must be of that conclusive character which is required to establish the defense of anticipation or of prior public use, to which contention the appellee cites authorities which hold that in suits for infringement of patents the defense of anticipation or prior use must be established by proof, clear, positive, and unequivocal, and that nothing must be left to speculation or conjecture. We cannot agree that the rule is applicable here. We think the rule to be applied is that which governs contests between rival inventors for priority of invention whose applications are pending at the same time, which is that, where both inventors have reduced their conceptions to practice, the burden of proof is on him whose application is second to show that he was the first to reduce the invention to practice, and that in sustaining such burden he is controlled by the ordinary rules of courts of law with respect to the burden of proof, and is required to establish his priority only by a fair preponderance of the evidence, and not by proof conclusive in character, or beyond a reasonable doubt. Wurts v. Harrington, 79 O. G. 337, 10 App. D. C. 149; Sundh Electric Co. v. Interborough Rapid Transit Co., 198 Fed. 94, 117 C. C. A. 280; Evans v. Associated Automatic Sprinkler Co., 241 Fed.

252, 154 C. C. A. 172; Automatic Sprinkler Co. v. Walworth Mfg. Co. (C. C.) 60 Fed. 605.

On behalf of the appellants, testimony was introduced to show that in the summer of 1911 the Wilson & Willard Manufacturing Company, for the appellants, had manufactured and sold devices which embodied all the features of the second group of the claims of their patent. The witness Madsen, owner of the Madsen Iron Works, made the castings for those devices, and he testified that they were made of such diameter that the collar on the pipe would lift the bushing when the stem was raised into the derrick. He produced copies of invoices of castings which he made at different periods between May and September of that year. He testified that the first devices made were not so constructed that the bushing would be lifted when the stem was raised, but that during the summer the change was made, and he was positive that it occurred before September, because on the 1st of September he changed his place of business, and in his memory he associated the making of the devices with his former place of business. E. C. Wilson, the president of the Wilson & Willard Manufacturing Company, testified that one of the devices was so made in the summer of 1911, and that early in the summer it was installed and in operation by the Pacific Light & Power Company in the Salt Lake oil field west of Los Angeles, under the superintendence of M. L. Thorn, and that he saw it there in use. It was in evidence that, at the time of taking the testimony in the case, Thorn was snowbound and inaccessible in the mountains of Nevada, and that, while the case was under submission, the appellants made application for leave to take his testimony, presenting his affidavit in which he deposed that in the summer of 1911, and prior to September he as such superintendent purchased from the appellants and used the rotary well-drilling outfit, with a drive bushing, and that the drive bushing of that outfit was directly engaged and withdrawn by the collar upon the elevation of the drive stem. The application was denied for want of diligence, and because the offered testimony was cumulative. W. W. Wilson, vice president of the Wilson & Willard Manufacturing Company, testified that in August, 1911, he saw in use, under the superintendence of M. L. Thorn, a rotary rig containing the appellants' combination. Charles E. Wilcox, salesman for the Wilson & Willard Manufacturing Company, and one of the patentees, testified that he saw the device in operation by the Pacific Light & Power Company in the spring or summer of 1911, and that it was furnished by the Wilson & Willard Manufacturing Company. Arthur G. Willard, the other patentee, testified that the change in the diameter of the bushing so as to permit it to engage the collar on the stem was made at his direction at the instance of Wilcox from drawings produced by him, and that the first device so made was constructed by the Madsen Iron Works in July, 1911. There was no contradiction of any of this testimony, and it was sufficient we think to sustain the burden of proof and to show that the Willard and Wilcox invention was reduced to practice two or three months before the date of the Griffin application for patent.

Turning to the other group of claims, we find that they are founded on a combination of the drive bushing device with certain devices called

"slips," which are employed for temporarily gripping the string and holding it suspended at any particular point of elevation. The slips are used in the operation of removing the string from the well and in the operation of restoring it thereto. The purpose is to hold the string firmly in place in order to permit its disjunction piece by piece, or the reconstruction of the same in a similar manner. In that operation the bushing device suspended on a collar of the stem is raised into the derrick, leaving in the rotating table an inverted conical space, in which space the slips are placed by hand around the suspended string. The slips are adapted when in position to form a cylindrical opening slightly less than the outside surface of the pipe. The inner faces of the slips are cut with transverse serrations adapted to grip the outer surface of the pipe and thereby support the weight of the suspended string. The combination claims are fairly presented in claim 2, which is as follows:

"Improvements of the character disclosed comprising in combination with a rotary table, a plurality of means of operative connection between the same and a string and each formed for separate application to the table in substitution for the other, there being interlocking means effective between one of said means of operative connection and the table whereby the string may be rotated upon rotation of the table; the other of said means of operative connection being formed and adapted to coact through the table and with slips to sustain the weight of the string."

The combination claims were held void by the court below on the ground that they present an aggregation and not a patentable combination. Said the court:

"When the slips or wedges are removed from the opening to allow the substitution of the drive bushing or nut, they are removed by hand and laid aside, here or there; far or near, as chance and the inclination of the operator may determine, leaving them, for the time, to be a part neither of this or any other machine, becoming a separate tool to be gone in search of when again needed, recovered, returned, and again placed by hand in the opening before assuming any relation to the rest of the machine."

And the court held that the mere fact that the opening in the table may be formed to accommodate in succession both the drive bushing for rotating the string, and the slips for hauling it up, does not render the table, the stem, the drive bushing, or the slips any part of one combination.

[6, 7] As we read the letters patent, the invention claimed is a combination of elements to be used in connection with a rotary well-drilling apparatus, to facilitate changing from the operation of drilling to the operation of removing the drill string from the well, and vice versa, and its function is fulfilled in the accomplishment of those results. The actual drilling of a well is only incidental, and is a function aside from that of the combination. It is not therefore a combination of a rotary boring device with a device for holding the boring pipe in position for disintegration or reconstruction, but it is a combination of certain features only of a boring device with a device for holding the same in position for a designated purpose. The mere fact that human agency intervenes in an operation does not render a combination unpatentable. Nor is it necessary that the action of the elements be simultaneous. Pelton Waterwheel Co. v. Doble, 190 Fed. 760, 111 C. C. A. 488; Burdett-Rowntree Mfg. Co. v. Standard Plung-

er E. Co. (C. C.) 196 Fed. 43; Novelty Glass Mfg. Co. v. Brookfield, 170 Fed. 946, 95 C. C. A. 516; Krell Auto Grand Piano Co. v. Story & Clark Co., 207 Fed. 946, 125 C. C. A. 394. Nor is it necessary that one of the constituent elements shall so enter into the combination as to change the action of the others. International Mausoleum Co. v. Sievert, 213 Fed. 225, 129 C. C. A. 569. It is sufficient if there be some joint operation performed by the elements producing a result due to their co-operative action. National Cash Register Co. v. American Cash Register Co., 53 Fed. 367, 3 C. C. A. 559; Toledo Computing Scale Co. v. Moneyweight Scale Co. (C. C.) 178 Fed. 557; New York Scaffolding Co. v. Whitney, 224 Fed. 452, 140 C. C. A. 138; Ohmer Fare Register Co. v. Ohmer, 238 Fed. 182, 151 C. C. A. 258. And the result itself need not be new. It is sufficient if an old result be produced in a more "facile, economical, or efficient way." New York Scaffolding Co. v. Whitney, supra; Pelton Waterwheel Co. v. Doble, supra.

[8, 9] But the difficulty in the way of sustaining the appellants' claims is that they do not exhibit a true combination. Under the patent laws protection is afforded to an invention or improvement of an art, machine, manufacture, or composition of matter. In Yale & Greenleaf Manufacturing Co. v. North, 5 Blatchf. 455, Fed. Cas. No. 18,123, Judge Shipman said:

"A combination in mechanism must consist of distinct mechanical parts, having some relation to each other, and each having some function in the organism."

Says Robinson, section 153:

"A combination is an instrument or operation formed by uniting two or more subordinate instruments or operations in a new idea of means."

Here the elements are not contained in a unitary structure, and the instrument is not formed by uniting two or more subordinate instruments. The device for holding the pipe string in position is a detached instrument which is no part of a machine or manufacture. The manual use of a tool or an unattached movable device cannot, we think, be made an element of a combination claim.

The decree as to claims 1, 2, 3, 4, and 5 is affirmed. As to the other claims, the decree is reversed, and the cause is remanded for further proceedings.